**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Reish, et al.,<br><br>    Appellants,<br><br>v.<br><br>Louie Mukai,<br><br>    Appellee. | No. CV-19-00400-PHX-DLR<br><br>**ORDER** |

Before the Court is Appellants' appeal of Bankruptcy Judge Daniel P. Collins' December 28, 2018 order (Doc. 1 at 8-29), which is fully briefed (Docs. 13, 29, 31). The Court held oral argument on November 15, 2019, and thereafter took this matter under advisement. (Doc. 35.) For the following reasons, the bankruptcy court's decision is affirmed in part and remanded in part.

**I. Background**

On February 2014, Mr. Reish entered into two helicopter purchase agreements ("HPA") with Phoenix Heliparts, Inc. ("PHP") for two airworthy helicopters—41FF and the Delta.[1] (Doc. 17-33 at 9-11, 43-45.) Mr. Reish made non-refundable deposits in the amount of $500,000 and $150,000 and agreed to pay base project prices of $1.395 million for 41FF and $975,000 for the Delta.[2] (*Id.*) The HPA also indicated that the bill of sale

---

[1] As of February 2014, both helicopters were on PHP's premises and in need of significant restoration, each having experienced a crash affecting its airworthiness.
[2] However, the HPA indicated that the final payment amounts were "TBD." (Doc. 17-11 at 9, 43.)

for each helicopter would be delivered to Mr. Reish upon full payment of the purchase price.³ (*Id.* at 11, 45.) PHP never delivered the Delta to Mr. Reish, despite Mr. Reish's full payment. Mr. Reish continued to make partial payments on 41FF.

On January 30, 2015, the Arizona Superior Court entered judgment in an unrelated matter against PHP in excess of $26 million. (Doc. 17-12 at 11.) Shortly thereafter, PHP's president, Tina Cannon, approached Mr. Reish and asked him to provide a loan to PHP through his company, Ryuko Inc. In April 2015, Ryuko loaned $850,000 to PHP pursuant to a promissory note ("the Ryuko note"), calling for repayment in the amount of $1,275,000 by no later than April 1, 2016. (Doc. 17-33 at 29-30.) PHP filed for bankruptcy on September 18, 2015. (*Id.* at 9.) Appellee was appointed as trustee on October 22, 2015. (Doc. 17-6.) The bill of sale for 41FF was delivered to Mr. Reish on October 27, 2015. (Doc. 17-33 at 77.) On November 25, 2015, Mr. Reish sold 41FF to the Azerbaijan Ministry of Defense ("AMOD") for $2.15 million without Appellee's knowledge or court approval.⁴ (Doc. 17-30-2-3.)

On July 12, 2016, Mr. Reish commenced an adversary proceeding by filing a complaint in bankruptcy court against the trust and trustee to determine the ownership interests in 41FF. (Doc. 17-29.) Mr. Mukai filed an answer, counterclaim and third-party complaint, adding Mr. Reish's wife, Kathleen Reish, and Ryuko Inc. as defendants. (*Id.*) On December 8, 2016, Mr. Mukai filed a motion for summary judgment (Doc. 17-32), and Mr. Reish and Ryuko Inc. filed a cross motion for summary judgment on January 17, 2017 (Doc. 18-1). On May 4, 2017, the bankruptcy court denied Mr. Reish and Ryuko Inc.'s cross motion for summary judgment and partially granted Mr. Mukai's motion for summary judgment. (Docs. 17-16, 17-17.) Mr. Reish and Ryuko Inc. appealed, and the bankruptcy appellate panel for the Ninth Circuit ("BAP") vacated the bankruptcy court's judgment and remanded for further proceedings. (Doc. 17-18.) On October 9, 2018, the bankruptcy court held a one-day trial, and on November 2, 2018, Mr. Reish and Mr. Mukai

---

³ The HPA also, confusingly, estimated a non-binding delivery date of the Delta within "three (6) months after receipt of the deposit." (Doc. 17-11. at 45.)
⁴ Throughout this entire process, 41FF remained unairworthy and at PHP's premises.

filed post-trial briefs. (Docs. 17-22, 17-23.) On December 28, 2018, the bankruptcy court entered its ruling (Doc. 1 at 8-29), finding in relevant part:

1. Mr. Reish's interest in 41FF is avoidable under § 544 or alternatively § 549.[5]
2. The obligation incurred in connection with the Ryuko note is avoidable under § 548.
3. Mr. Reish's proof of claim number 37 is presently $0 but will be allowed to the extent of Mr. Reish's satisfaction of the order to return the $2.15 million in sale proceeds.
4. Mr. Reish's proof of claim number 39 is allowed in the amount of $875,000. Mr. Reish may not recover for lost rents on the Delta.

(Doc. 1 at 9.) On January 25, 2019, Mr. and Mrs. Reish and Ryuko Inc. appealed these four findings to this Court. (Doc. 1, 13, 29, 31.) The Court held oral argument on November 15, 2019. (Doc. 35.) The matter is now ripe.

## II. Legal Standard

On appeal, the Court reviews a bankruptcy court's findings of fact under the clearly erroneous standard. *In re Johnston*, 21 F. 3d 323, 326 (9th Cir. 1994). The bankruptcy court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009). The Court reviews de novo mixed issues of law and fact and conclusions of law. *In re Su*, 290 F. 3d 1140, 1142 (9th Cir. 2002)

## III. Discussion

Having carefully considered the parties' briefs, arguments, and presentations during oral argument, the Court affirms in part and remands in part. The Court will provide its rationale on the issues, in turn.

### A. 41FF

The bankruptcy court determined that Mr. Reish's interest in 41FF is avoidable. The court provided three bases for this determination. First, the Federal Aviation Act ("FAA") preempts Arizona state law, rendering any unrecorded special property interest

---

[5] Unless otherwise noted, all section references are to Bankruptcy Code 11 U.S.C. §§ 101-1532.

1 held by Mr. Reish avoidable under §§ 544 or 549. (Doc. 1 at 12.) Second, even if state law were not preempted by the FAA, the Uniform Commercial Code ("UCC") would not apply and Mr. Reish would lack any special property interest available pursuant to the UCC, because the HPA was a service contract rather than a contract for goods. (*Id.* at 19-21.) Third, even if Mr. Reish possessed a special property interest, he would nevertheless lack the right of recovery or replevin under Arizona law because he purchased 41FF for commercial rather than personal purposes. (*Id.* at 16-19.) In order to prevail on the 41FF issue, Mr. Reish must prove that all three bases for the bankruptcy's decision were erroneous. Mr. Reish does not meet his burden.

### 1. The FAA

The applicability of the FAA is an issue of law reviewed de novo. The Court concludes that the FAA preempts state law, rendering any potential special property interest held by Mr. Reish pursuant to the UCC unenforceable and avoidable under §§ 544 or 549. The Court therefore will affirm the bankruptcy court's 41FF determination.

Federal preemption occurs when Congress explicitly includes a preemption provision in a statute or when preemption is implied when the structure or purpose of a statute or regulation conflicts with a state framework. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992); *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152 (1982). Here, Mr. Reish asserts that the "UCC dictates how title disputes to aircraft in Arizona are handled." (Doc. 16 at 13.) However, the Supreme Court has explained, "[a]lthough state law determines priorities [of recorded interests], all interests must be federally recorded [pursuant to the FAA] before they can obtain whatever priority to which they are entitled under state law." *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 413 (1983). Likewise, priority also "appears to be determined by operation of the [federal] statute . . . where the security holder has failed to record his interest. Such failure invalidates the conveyance as to innocent third persons."[6] *Id.* It is undisputed that Mr.

---

[6] Mr. Reish's efforts to distinguish *Philko*—by contending that *Philko*, unlike the case at bar, concerned innocent third parties—lack merit. Particularly, Mr. Reish contends, "PHP had [] notice imputed to it by the actions of Cannon, its president and the trustee's employee; and the trustee by stepping into the shoes of PHP when he was appointed, was

- 4 -

Reish failed to record his interest in 41FF until after PHP filed for bankruptcy. Therefore, the FAA applies.

The relevant FAA provision provides that an unrecorded interest is valid only against (1) the person making the conveyance, (2) that person's heirs and devisees, and (3) a person having actual notice of the conveyance. 49 U.S.C. § 44108(a). The Trustee, as a judicial creditor since the bankruptcy petition date pursuant to § 544,[7] regardless of his knowledge, does not fall into any of these three categories. *See In re Air Specialties Corp.*, 56 F. 3d 70 (9th Cir. 1995) ("Section 544(a) allows the Trustee to step into the shoes of a hypothetical lien creditor whose lien was perfected as of the commencement of the case. Whether the Trustee actually recorded his interest . . . is irrelevant."). In other words, Mr. Reish's unrecorded interest is invalid as to the Trustee and therefore may be avoided under § 544.

Mr. Reish's interest may also be avoided under § 549, which enables a trustee to avoid a transfer of property of the estate that occurs post-petition and is not authorized by the bankruptcy code or the court. *In re Straightline Inv., Inc.*, 525 F. 3d 870, 877 (9th Cir.

---

charged with that actual notice as well." (Doc. 16 at 17-18.) However, as the Court will soon explain, § 544 provides the Trustee innocent third party status, regardless of the Trustee's actual knowledge.

[7] Section 544 states, in relevant part,

> (a) The trustee shall have, as of the commencement of the case, and *without regard to any knowledge of the trustee or of any creditor*, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists[.]

11 U.S.C. § 544 (emphasis added).

2008). In order to avoid a transfer under § 549, a trustee must prove: (1) estate property (2) was transferred (3) after commencement of the bankruptcy (4) without authorization of statute or the court. *In re First Protection, Inc.*, 440 B.R. 821, 827-28 (9th Cir. BAP 2010). Here, the record establishes that PHP transferred 41FF to Mr. Reish by delivering the bill of sale to him over one month after PHP filed for bankruptcy. When Ms. Cannon signed the bill of sale and delivered it to Mr. Reish post-petition, she did not have actual or constructive authority from the court or the Trustee to do so. Consequently, this transfer may also be avoided pursuant to § 549.

### B. The Ryuko Note

The bankruptcy court determined that the Ryuko note is avoidable under § 548(a)(1)(B), which permits a trustee to avoid constructively fraudulent transfers. (Doc. 1 at 22.) Pursuant to § 548(a)(1)(B), a trustee may avoid a transfer/obligation the debtor made or incurred within the two years preceding the petition date if the debtor received "less than a reasonably equivalent value in exchange for such transfer or obligation" and was insolvent on the date of the transfer was made or obligation incurred. The Court affirms that the Ryuko note is avoidable under § 548(a)(1)(B) for the following reasons.

It is undisputed that PHP incurred an obligation under the Ryuko note while it was insolvent and five months prior to filing its bankruptcy petition. Therefore, the only issue before the Court is whether the exchange between PHP and Ryuko Inc. was for less than reasonably equivalent value. Whether an exchange was for less than reasonably equivalent value is a finding of fact reviewed under the clearly erroneous standard. *In re JTS Corp.*, 617 F. 3d 1102, 1109-10 (9th Cir. 2010); *In re Tuma*, 916 F. 2d 488, 491 (9th Cir. 1990).

Here, the bankruptcy court determined that Ryuko loaned $759,372[8] to PHP in exchange for repayment in the amount of $1.275 million within one year. (Doc. 1 at 24.) At trial, the bankruptcy court elicited testimony from the Trustee that a reasonable interest rate for a one-year loan would be 15%. (*Id.* at 23.) In contrast, Mr. Reish testified that the

---

[8] The parties stipulated that $90,628 of the $850,000 transferred from Ryuko Inc. to PHP was credited for PHP's work performed to repair a helicopter owned by Mr. Reish, and therefore constituted payment for services to the debtor, rather than a loan. (Doc. 1 at 24.)

- 6 -

internal rate of return on the Ryuko note, which exceeded 50%, was reasonable in consideration of his increased taxes from short-term capital gains, not because he believed loaning to PHP was a credit risk. (*Id.* at 24.) Citing to this evidence, the bankruptcy court concluded that imposing a 15% rate of return would promote the exchange of reasonably equivalent value. (*Id.*) Applying this rate, it allowed Mr. Reish to recover in the amount of $807,432 under Claim 35. The Court concludes that the bankruptcy court's calculation of reasonably equivalent value was not clearly erroneous and therefore affirms. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) (stating that a court's choice between two different views of the evidence is not clearly erroneous).

### C. Claim 37

The bankruptcy court determined that, because Mr. Reish's special interest in 41FF was avoidable under §§ 544 or 549, he was required to turn over $2.15 million—the proceeds from Mr. Reish's sale of 41FF to AMOD— to the Trustee. Pursuant to the court's holding on Claim 37, Mr. Reish would be able to recover, dollar for dollar, the amount satisfied under the $2.15 million judgment. (Doc. 1 at 9.) Mr. Reish objects to the bankruptcy court's determination of the value that must be returned to the Trustee. (Doc. 16 at 32.)

Under § 550, once a trustee establishes that a transfer is avoidable under §§ 544 or 549, the trustee may recover the property or the value of such property from the transferee. 11 U.S.C. § 550(a). "The bankruptcy court's choice of remedies is reviewed for an abuse of discretion." *In re Lopez*, 345 F. 3d 701, 705 (9th Cir. 2003). Here, the bankruptcy court ordered a return of the value of the property, rather than the property itself.[9] *See In re Classic Drywall, Inc.*, 127 B.R. 874, 877 (Bankr. D. Kan. 1991) ("Where the property is unrecoverable[,] courts will permit the recovery of value."). The bankruptcy court determined the value of 41FF to be $2.15 million because AMOD agreed to pay that amount to Mr. Reish on November 25, 2015 in exchange for 41FF in airworthy condition.

---

[9] The choice of remedies in this case is complicated by the fact that the 41FF property, itself, has remained on PHP's premises throughout this case, even though, as the Court understands it, the bill of sale transferred to AMOD.

(Doc. 1 at 21.) However, it is undisputed that 41FF, at all relevant times, has not been airworthy. Therefore, the bankruptcy court abused its discretion in valuing 41FF as if it were airworthy.

Pursuant to § 550, Mr. Reish is required to turn over only the value to the Trustee that 41FF held at the time PHP transferred it to Mr. Reish. *In re McLaughlin*, 183 B.R. 171, 177 (Bankr. D. Wis. 1995) (citation omitted) (The value "at the time of transfer is the proper measure of § 550 damages."). The return of this value "effectuates the intent of § 550 to restore the bankrupt estate to the financial condition it enjoyed prior to the transfer." *In re JTS Corp.*, 617 F.3d at 1116. Prior to the transfer, PHP enjoyed the financial position associated with the possession of a damaged helicopter shell. Requiring Mr. Reish to return the value of an operable helicopter, instead, would vastly overcompensate the bankrupt estate, contrary to § 550's purpose.

As a result, the Court will remand this matter to the bankruptcy court to ascertain the property value of 41FF on October 27, 2015. Following this determination, Mr. Reish shall be required to return that value to the Trustee.

**D. Claim 39**

Under Claim 39, the bankruptcy court determined that Mr. Reish could not recover the Delta's lost rents, despite PHP's failure to deliver the Delta in airworthy condition pursuant to the HPA, because Mr. Reish failed to prove that the HPA required the Delta to be delivered to Mr. Reish by a particular date. (Doc. 1 at 28.) Mr. Reish contends that the bankruptcy court erred in denying relief on this basis because the UCC imputes that the shipment or delivery occur within a reasonable time where a contract does not include a delivery date. (Doc. 16 at 34) (citing A.R.S. § 47-2309(a)). However, as Mr. Reish conceded at oral argument, the UCC's "reasonable time" imputation only applies to contracts whose dominant purpose is for the sale of goods rather than services. Therefore, the Court must determine whether the predominate aspect of the HPA—which unquestionably concerns both goods (one helicopter) and services (refurbishing the damaged vehicle into an airworthy helicopter)—is the sale of goods or the providing of

services. *Double AA Builders, Ltd. v. Grand State Constr. LLC.,* 114 P.3d 835, 842 (Ariz. Ct. App. 2005).

The predominant purpose of the HPA is ultimately an issue of law reviewed de novo. *Hall Family Props., Ltd. v. Gosnell Dev. Corp.*, 916 P. 2d 1098, 1104 (Ariz. Ct. App. 1995). Having reviewed the evidence anew, the Court concludes that, although the HPA involved the receipt of an existing and identified good (41FF), the predominant purpose of the HPA was for PHP to renovate, repair and modify 41FF—transforming it from a damaged shell lacking necessary parts into an airworthy vehicle—on Mr. Reish's behalf.[10] Accordingly, the UCC does not apply under the circumstances, and Mr. Reish's argument fails. The Court therefore affirms the denial of recovery of the Delta's lost rents.

**IT IS ORDERED** that December 28, 2018 order (Doc. 1 at 8-29) is **AFFIRMED IN PART** and **REMANDED IN PART**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to terminate any remaining deadlines and hearings, enter judgement accordingly, and terminate this case.

Dated this 25th day of November, 2019.

Douglas L. Rayes
United States District Judge

---

[10] The evidence overwhelmingly supports the finding that the HPA was predominantly a service contract. Ms. Cannon testified that the HPA contemplated the performance of thousands of hours of labor in order to repair 41FF according to Mr. Reish's specifications, and that the $1.395 million cost of the contract was calculated according to an estimate of seventy percent services and thirty percent parts. (Doc. 18-7 at 105.) In addition, Mr. Reish testified that he revised the "laundry list" of repairs and alterations to be made on the helicopter repeatedly, even after the HPA was entered (*id.* at 1137), emphasizing his prioritization of services, rather than simple receipt of a helicopter. Further, the HPA itself included both a base price of $1.395 million and a final price of "TBD," reflecting that the parties anticipated additional costs to arise from altered specifications and supplemental services. (Doc. 17-33 at 9.)